ERNST ZOBEL COMPANY, Appellant, *v.* JUAN A. CANALS and Others, Copartners under the Firm Name and Style of CANALS, DAVALOS & COMPANY, Respondents.

First Department, May 29, 1919.

Sales — contract for purchase of goods to be shipped from foreign country — time of delivery as element of contract — effect of failure to raise question in trial court — new trial — competency of contents of test slips to prove quality of goods — misconduct of counsel in injecting citizenship of witness into trial for purposes of impeachment — obtaining verdict on prejudice arising out of war.

In an action, *first*, for damages arising from the failure of the defendants to accept and pay for 8,000 pounds of indigo, and *second*, on contract for an alleged balance due and owing on the sale and delivery of 3,000 pounds, it appeared that in the latter part of April the parties had arrived at an agreement for the sale and purchase of 2,000 pounds, but later negotiations terminated in a formal letter written by the defendants on April twenty-eighth, evidently confirming a verbal order for 3,000 pounds, at two dollars and eighty-five cents a pound; that on May second another letter was written by defendants evidently confirming another verbal order for 8,000 pounds, at the same price; that the final sentence of the order was as follows: " Early May delivery, on S. S. ' Vinovia ' no arrival no sale," and that on the same day plaintiff wrote the defendants confirming acceptance of the two orders. With reference to the order for 3,000 pounds the terms, among others, were that the indigo was to be of a certain test, and the delivery was to be: " Ex. ' S. S. Vinovia,' " but plaintiff's letter made no reference to defendants' written orders, and omitted as to the 8,000 pounds the words " no arrival no sale." The *Vinovia* did not arrive until May twenty-fifth, and the defendants accepted 3,000 pounds, but refused to accept the 8,000 pounds because the delivery was too late. Owing to war conditions the defendants were unwilling

First Department, May, 1919.                    [Vol. 188.

to and did not make the contract until it was definitely known that the vessel carrying the goods had sailed. No part of the cargo was specifically designated for the defendants. The trial court ruled, as a matter of law, that the delivery was not tendered in time, but left it to the jury to find whether or not there had been a waiver with respect thereto.

*Held*, that, even if plaintiff's contention that the tender was made in time was deemed sound, the court could not dispose of the case on that theory, but could only grant a new trial, since no motion for a directed verdict was made.

Where in such an action the plaintiff sought to recover, on the second count, which was dismissed, more than two dollars and eighty-five cents a pound, which had been paid for the indigo delivered, on the ground that it contained a higher percentage of indigotine, but did not call the chemist who made the test, he was not entitled to show the contents of the test slips without producing either the chemist or the slips.

Where, on the trial of such action, it appeared that counsel for the defendants repeatedly tried to get before the jury the fact that plaintiff's principal witness was an alien enemy, it appearing that he was not in plaintiff's employ at the time of the trial, by asking him why he left plaintiff's employ, and whether plaintiff's place of business was not within the " prohibited war zone," the misconduct of counsel was not cured by the trial court's instruction that the citizenship of the witness should not prejudice him, and the prejudice thus engendered in the minds of the jurors will warrant a reversal.

APPEAL by the plaintiff, Ernst Zobel Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 12th day of December, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 13th day of January, 1919, denying plaintiff's motion for a new trial made upon the minutes.

*William Pinkney Hamilton, Jr.*, of counsel [*Hamilton & Stratmann*, attorneys], for the appellant.

*Samuel Marion* of counsel [*Vogel & Marion*, attorneys], for the respondents.

LAUGHLIN, J.:

The complaint contains two counts; the first is for damages arising from failure of the defendants to accept and pay for 8,000 pounds of indigo in accordance with a contract between the parties; the second is on contract for the balance alleged to be due and owing on the sale and delivery of 3,000 pounds of indigo to the defendants.

At the close of the evidence the court dismissed the complaint as to the second count and submitted the first count to the jury, and they rendered a verdict in favor of the defendants. The evidence shows that the latter part of April, 1917, one Erlanger, the plaintiff's sales manager, opened negotiations with the defendants with a view to selling to them Indian indigo which the plaintiff was importing. It appears that on or about the twenty-third of the month they had practically arrived at an agreement for the sale of 2,000 pounds, but the defendants were desirous of purchasing more, and of obtaining a larger quantity at a lower rate. Negotiations to that end resulted in a formal letter, written by the defendants to the plaintiff, on April twenty-eighth, evidently confirming a verbal order which they had given to the plaintiff for the purchase of 3,000 pounds of Indian indigo at two dollars and eighty-five cents per pound. On the 2d of May, 1917, the defendants wrote the plaintiff, evidently confirming a verbal order for 8,000 pounds at two dollars and eighty cents per pound, and the final sentence of the order was as follows: " Early May delivery, on S. S. ' Vinovia ' no arrival no sale." On said 2d day of May, 1917, the plaintiff wrote the defendants referring to their two orders, among other things, as follows:

" Referring to our conversation of to-day, we beg to confirm acceptation of your order as follows:

" 3,000 lbs. Natural Indigo (Indian) at $2.85 per pound in bond, New York, basis of 50 per cent Indigotine, Dr. Briggs or Dr. Perkins test.

" Terms: Net cash against shipping documents.

" Delivery: Early May. No arrival no sale.

" Further 8,000 pounds Indian Indigo at $2.80 per lb. in bond New York.

" Terms: As above. Early May delivery. Ex ' S. S. Vinovia.' "

It will be observed that this letter does not expressly refer to the defendants' *written* orders and omits as to the 8,000 pounds the words " no arrival no sale." No significance, however, is attached to that and doubtless plaintiff's letter was written before defendants' was received.

The steamer *Vinovia*, referred to in the contract, did not

arrive in New York until the 25th of May, 1917. The defendants accepted delivery of 3,000 pounds of the indigo on arrival of the steamer, and paid therefor at the rate of two dollars and eighty-five cents per pound, but they refused to receive the 8,000 pounds on the ground that it arrived too late to constitute a compliance with the contract for " Early May delivery," although a like provision governed the 3,000 pounds which they accepted. It appears that the plaintiff had a quantity of the indigo in England intending to ship it to the United States, and expected that it would come on the steamer *Vinovia.* Owing to the uncertainty, incident to the war, with respect to ships sailing, the defendants were unwilling to make the contract until it was known that the ship transporting the indigo had left the foreign port and was *en route* to New York. Consequently when the plaintiff received cabled information that the *Vinovia*, on which it was shipping thirty-eight chests of this indigo, had sailed the contract was made, as already stated, which embraced only twenty-five or twenty-six of the chests; but it did not identify any particular chests of the thirty-eight as applicable thereto. The trial court ruled and instructed the jury, as a matter of law, that the delivery was not tendered in time, but left it to them to find whether, on conflicting evidence, there was a waiver with respect to the time of delivery. The plaintiff, neither by a motion for a direction of a verdict, nor by a request to charge, raised the point as to whether, in the circumstances, the contract should be construed as obligating the defendants to accept delivery on the arrival of the steamer *Vinovia.* The appellant now contends that, as a matter of law, the tender of delivery was timely made, and its counsel relies on *Havemeyer* v. *Cunningham* (35 Barb. 515; 22 How. Pr. 87) and *Hawes* v. *Lawrence* (3 Sandf. 193; affd., 4 N. Y. 345) in support of that contention. Neither case is a precedent on the facts now before us, for here, with full knowledge that the goods were on a particular steamer, the plaintiff contracted for an early May delivery, and there being no sale of particular, designated goods, but merely an executory contract to purchase goods *en route* — there is room for argument that the agreement was conditional on their arrival in time for an early May delivery. That question of law,

however, is not presented for decision and has not been exhaustively briefed, and, therefore, we express no opinion thereon, for if we deemed plaintiff's present contention, which was not made on the trial, sound, we could not dispose of the case on that theory, and could only grant a new trial, inasmuch as no motion for a direction of a verdict was made. The plaintiff does not complain that the verdict was against the weight of the evidence on the issue of fact submitted to the jury. One contention made by the appellant relates only to the second cause of action which was dismissed. Under the second count the plaintiff claimed the right to recover more than the amount at the rate of two dollars and eighty-five cents per pound, which had been paid for the indigo delivered and which was accepted by the defendants. This claim was made on the theory that the indigo contained a higher per cent of indigotine on the basis of fifty per cent on which the contract was made. On that point instead of calling the chemist who made the test of the indigo it offered to show the contents of the test slips, which it claimed showed the analysis made by the chemist, without producing the chemist or even the test slips. Manifestly such evidence was incompetent. The trial court was, therefore, right in ruling that the plaintiff was not entitled to recover on the second count. The other contentions made by the appellant are that the tender of delivery was timely made; that the sale was absolute and not conditional on the arrival of the vessel in the early part of May, and that a motion made by it to withdraw a juror should have been granted. The trial took place on the 4th day of December, 1918. The issue of fact submitted to the jury and decided adversely to the plaintiff presented a question of veracity between the plaintiff's sales manager, Erlanger, and the defendant Davalos. The appellant claims that Erlanger at the time of the trial, and of these transactions, was an enemy alien, being a German subject, and that the jury deemed him unworthy of credence on that ground, and that this was improperly brought to the attention of the jury by the attorney for the defendants. It appeared that Erlanger was not in the employ of the plaintiff at the time of the trial. The attorney for the defendants, on cross-examination, asked Erlanger what the occasion was for his leaving the employ of

the plaintiff, and he answered that the company wanted him to go to Chicago and take charge of their business there and that he did not want to go. He was then asked if he was· a citizen. This was objected to by counsel for the plaintiff as improper, and he announced, in effect, that if there was any further attempt in that direction he would move to withdraw a juror. Later on during the cross-examination Erlanger was asked where the plaintiff's place of business was and he answered that it was at Second avenue and Tenth street in the city of Brooklyn. He was then asked the following: " It is within a half mile of the water front, isn't it? " and he answered that he did not know.. Then he was asked: " Is it within the prohibited war zone? " To this also he answered that he did not know. After the witness had answered counsel for the plaintiff inquired of the court whether that was proper cross-examination and the court replied that the witness had answered. After the court, in the charge, had drawn attention to the issue of fact on which the case depended, and to the fact that it was a question of veracity between Erlanger and the defendant Davalos, counsel for the plaintiff made a motion as follows: " I also desire, for the purposes of the record, by reason of the injection of the citizenship of the witness Erlanger and the question of whether Zobel's office was within the prohibited war zone — I think that those questions had a tendency to prejudice the jury, and I move to withdraw a juror because of those questions." The motion was denied and he excepted. The court thereupon instructed the jury that the evidence with reference to which the motion had been made should not prejudice them against Erlanger or. the plaintiff and that people who are not citizens have the same rights and standing in our courts as those who are. There can be no doubt but that the attorney for the defendants deliberately attempted to influence the jury to the prejudice of the plaintiff by bringing out the ·evidence indicating that Erlanger, who was not a citizen, was obliged to leave the plaintiff's employ because its place of business was within the war zone and that, therefore, presumably he was an enemy alien. There was nothing in the remarks of court or counsel tending to withdraw that impression, but on the contrary such remarks as were made had the tendency to emphasize it.

In view of the pendency of war between our country and Germany and of the issues involved in the war and of the brutal manner in which it was waged by Germany, this evidence was calculated to give the defendants an unfair advantage on the determination of the sole issue of fact submitted to the jury. If Erlanger's testimony was reliable the defendants waived any objection they had with respect to the tender of delivery of the goods within the time limited therefor in the contract. It cannot be said that the error was cured by the instructions of the learned trial court. This is the first case that has come before us where an attorney has overstepped the bounds and endeavored to obtain a verdict for his client, not on the merits but on prejudice arising out of the war. It may be unfortunate for the client, but above all we must enforce impartiality in the administration of justice.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.